**Dr. Raymond G. TRONZO, Plaintiff–Appellant,**

v.

**BIOMET, INC., Defendant–Appellee.**

**No. 00–1007.**

United States Court of Appeals, Federal Circuit.

Jan. 17, 2001.

James F. Davis, Howrey Simon Arnold & White, LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Jeffrey I. Auerbach, Of counsel on the brief were Robert S. Hackleman, Connis O. Brown, III, and George S. LeMieux, Gunster, Yoakley Valdes Fauli & Stewart, P.A., of Fort Lauderdale, Florida.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendant-appellee. With him on the brief were Don O. Burley, and Robert L. Burns. Of counsel on the brief was L. Martin Reeder, Jr., Greenberg Traurig, P.A., of West Palm Beach, Florida. Of counsel was Edwin G. Torres, Steel Hector & Davis LLP, of Miami, Florida.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and LOURIE, Circuit Judge.

ARCHER, Senior Circuit Judge.

Dr. Raymond G. Tronzo ("Dr.Tronzo") appeals the judgment of the United States District Court for the Southern District of Florida. *Tronzo v. Biomet, Inc.*, No. 91–8175–CIV–HURLEY (S.D.Fla. Aug.27, 1999), and underlying orders. Specifically, Dr. Tronzo appeals the reduction in an award of compensatory damages from $7,134,000 to $520, the reduction of punitive damages from $20,000,000 to $52,000, and the rejection of Dr. Tronzo's request for a new trial in light of the court's reduction of the jury's award of compensatory and punitive damages. Concluding that the district court erred only in revisiting the issue of the proper amount of punitive damages, we affirm-in-part and reverse-in-part.

## BACKGROUND

This case returns to this court following remand from an earlier appeal, *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 47 USPQ2d 1829 (Fed.Cir.1998) ("*Tronzo I*"), from the judgment of the Southern District of Florida, *Tronzo v. Biomet, Inc.*, 950 F.Supp. 1149, 41 USPQ2d 1403 (S.D.Fla.1996).

The underlying dispute between Dr. Tronzo and Biomet concerns a medical device, called an "acetabular cup," that forms the upper portion of a hip implant. Dr. Tronzo alleged that he had established a confidential relationship with Biomet for the purpose of bringing his acetabular cup design to market. According to Dr. Tronzo, Biomet was to pay him for his invention if he could successfully obtain a patent on his invention. Dr. Tronzo claims that Biomet failed to compensate him and, instead, took his ideas and incorporated them into its highly successful Mallory/Head cup design (named after Drs. Thomas Mallory and William Head). Dr. Tronzo brought suit in the Southern District of Florida for infringement of United States Patent No. 4,743,262 ("the '262 patent"), issued May 10, 1988, and, under Florida law, for breach of a confidential relationship, fraud, and unjust enrichment.

A jury found in favor of Dr. Tronzo on all counts, finding, by special verdict, that the '262 patent was valid and willfully infringed by Biomet and that Biomet was liable under state law for breach of a confidential relationship, fraud, and unjust enrichment. The jury awarded Dr. Tronzo $3,805,000 for patent infringement, $4,757,000 in compensatory plus $15,000,000 in punitive damages for the breach of a confidential relationship, $7,134,000 in compensatory plus $20,000,000 in punitive damages for fraud, and $4,750,000 in compensatory damages for unjust enrichment. The district court then enhanced the jury's patent infringement award by 50% (pursuant to 35 U.S.C.

§ 284), dismissed the unjust enrichment count, and capped the total recovery at $7,134,000 in compensatory damages plus $20,000,000 in punitive damages to avoid double recovery.

On appeal of the district court's decision, Biomet argued that some of the claims of the '262 patent were invalid and that the other claims asserted were not infringed. Biomet further contested liability with respect to the state law claims and the compensatory damages associated with those claims. Biomet did not appeal the punitive damage award.

In reviewing Biomet's appeal in *Tronzo I*, we reversed the district court's findings of patent infringement, holding that some of the asserted claims were invalid and the other claims were not infringed. In addition, we upheld the district court's finding of liability on the state law counts, but reversed its judgment with respect to the amount of compensatory damages, holding that Dr. Tronzo had failed to establish the necessary nexus between the damages claimed and the injury sustained. The damages award granted by the district court had been computed based on Biomet's profits. We concluded that this was an incorrect measure of Dr. Tronzo's damages under controlling state law. *See Tronzo I*, 156 F.3d at 1161, 47 USPQ2d at 1835.

Because the compensatory damages were computed incorrectly, we remanded to the district court to determine if there was evidence on the record to "prove any of the costs and injuries incurred by [Dr.] Tronzo, such as the costs of prosecuting the patent and lost business opportunities." *Id.* If no such evidence existed on the record, we left it to the district court to decide, at its discretion, whether it would be appropriate to take new evidence.

On remand, the district court reviewed the evidence on the record concerning damages and concluded that, aside from $520 in patent prosecution costs, there was a "complete absence of competent substantial evidence to support the vacated portion of the award." The district court considered Dr. Tronzo's arguments that his lost business opportunities could be measured by looking to the value of Biomet's Mallory/Head system, which allegedly incorporated Dr. Tronzo's misappropriated ideas. The district court, however, rejected this argument, reasoning that such a measure of damages was foreclosed by our decision on appeal. Then, exercising its discretion, the district court declined to reopen the record to take new evidence concerning compensatory damages. In making this decision, the court reasoned that both parties had been represented by competent counsel and had made strategic decisions in this protracted litigation. Accordingly, the court set the compensatory damages at $520, the maximum amount supported by the evidence in the record.

In response to the district court's reduction of the compensatory damages award, Dr. Tronzo asserted that this order constituted a remittitur, advised the court that he rejected this remittitur, and moved for a new trial on the issue of compensatory damages. The court rejected Dr. Tronzo's motion.

Biomet then moved for a reduction in the amount of punitive damages, arguing that, given the reduction in the compensatory damages award, the disparity between the amounts of compensatory and punitive damages now rendered the punitive damages amount unconstitutional. The court considered Biomet's argument, applying the Supreme Court's criteria in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), to determine whether the punitive damages award violated due process. Noting that the disparity in the awards was greater than 38,000 to 1, the court granted Biomet's motion, and reduced the punitive damages award to $52,000, the maximum amount of punitive damages it considered permissible: 100 times the compensatory damages.

On August 27, 1999, the district court entered its Third Amended Final Judgment, implementing the terms of its sever-

al orders and setting compensatory damages at $520, punitive damages at $52,000, and awarding prejudgment interest on the compensatory damages award. *Tronzo v. Biomet, Inc.*, No. 91–8175–CIV–HURLEY (S.D.Fla. Aug.27, 1999).

In response to the court's reduction in the punitive damages award, Dr. Tronzo again argued this constituted a remittitur, and moved for a new trial on punitive and compensatory damages. The district court denied this motion.

This appeal followed. Dr. Tronzo asserts legal error in the district court's reduction in the jury's awards of compensatory and punitive damages and, in light of these reductions, in the district court's denial of its motions for a new trial on damages.

## DISCUSSION

### I. *Jurisdiction and Standard of Review*

This appeal follows the remand of an earlier appeal of a matter arising, in part, under the patent laws. Since the jurisdiction of the district court was based, in part, on 28 U.S.C. § 1338 (1994), we have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1) (1994).

■ We review issues not unique to patent law according to the law of the regional circuit where appeals from the district court would normally lie. *Novamedix v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180, 49 USPQ2d 1613, 1615 (Fed. Cir.1999); *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1301, 50 USPQ2d 1429, 1434 (Fed.Cir.1999) (holding district court's evidentiary decisions are reviewed under the law of the regional circuit). Accordingly, under controlling Eleventh Circuit law, we review the district court's conclusions of law *de novo*. *Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1405 (11th Cir.1993).

■ We also review *de novo* the interpretation of our own mandate in *Tronzo I. See Engel Indus. v. Lockformer Co.*, 166 F.3d 1379, 1382, 49 USPQ2d 1618, 1621 (Fed.Cir.1999).

### II. *Compensatory Damages*

Dr. Tronzo claims legal error in the district court's reduction of the jury's award of compensatory damages from $7,134,000 to $520. Dr. Tronzo first argues that, under Florida law, a court may broadly consider any evidence of record that logically establishes the correct value of property taken by fraud. Dr. Tronzo contends that the district court should have considered as a proper measure of the value of the "property" taken from him either (1) payments by Biomet to Drs. Mallory and Head for their hip implant allegedly incorporating Dr. Tronzo's ideas or (2) Biomet's profits from its sales of the Mallory/Head device. Since this evidence amply supports the jury award, Dr. Tronzo asserts that the district court should have upheld the entire jury award of compensatory damages. Dr. Tronzo's arguments, however, are foreclosed by our decision in *Tronzo I.*

■ In *Tronzo I*, we held that the award of lost profits as damages for the torts asserted was inappropriate because it did not reflect the actual injury sustained by Dr. Tronzo. *Tronzo I*, 156 F.3d at 1161, 47 USPQ2d at 1835. Dr. Tronzo cannot now circumvent this holding by simply recasting his claim for damages measured by Biomet's profits as a claim for "out-of-pocket" losses. No matter how Dr. Tronzo frames this claim, he cannot establish the necessary nexus between his tort injuries and Biomet's profits from sales of the Mallory/Head device. Similarly, we cannot accept Dr. Tronzo's arguments that payments to Drs. Mallory and Head can provide a proper measure of his losses. Those payments were based on royalty payments for the Mallory/Head device as well as other related products, and also reflect compensation for various services provided by the two doctors. As such, they are simply too remote and inconclusive to reflect the actual injury to Dr. Tronzo or to measure the amount of his damages. Rather, as we instructed in *Tronzo I*, Dr. Tronzo's injuries were to be

measured by any record evidence properly establishing his losses, including evidence of his costs in prosecuting his patent and his lost business opportunities. *Id.*

On remand, the district court followed our instruction and reviewed the record for any such evidence. The court found that the only costs of patent prosecution supported in the record were $520. On appeal, neither party disputes this figure. As for "lost business opportunities," the district court found no evidence in support of Dr. Tronzo's claim of damages. *Id.* Dr. Tronzo confined his arguments to lost business opportunities measured by reference to either payments to Drs. Mallory and Head or Biomet's profits. The district court properly rejected such evidence. Thus, we see no error in the district court's computation of compensatory damages on remand.

In the alternative, Dr. Tronzo asserts that the district court should have applied the "wrongdoer rule" to support the full compensatory damages award. The wrongdoer rule is a principle explained in *Bigelow v. R.K.O. Radio Pictures,* 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946), whereby a "wrongdoer may not object to the plaintiff's reasonable estimate of the cause of injury and of its amount, supported by the evidence, because not based on more accurate data which the wrongdoer's misconduct has rendered unavailable." *Id.* at 265, 66 S.Ct. 574. Noting that Dr. Tronzo raised this argument for the first time on remand, the district court refused to entertain this argument. Dr. Tronzo claims legal error in the district court's refusal.

We reject this argument as well. As the district court explained, Dr. Tronzo made strategic decisions in the initial trial concerning what evidence and arguments to advance in support of his theory of damages. We see no error, therefore, in the district court's refusal to address a new theory presented for the first time on remand. Moreover, even if the district court had chosen to address this theory, it would have been obliged to reject it. The wrong-

doer rule does not obviate the requirement for a nexus between an injury and the claimed damages. *Bigelow,* 327 U.S. at 264, 66 S.Ct. 574 (noting that in applying the wrongdoer rule, the verdict must be based on a just and reasonable estimate of the damages, not speculation or guesswork.) Thus, this rule cannot be applied to justify Dr. Tronzo's reliance on either Biomet's profits or payments to Drs. Mallory and Head as a measure of its damages.

### III. *Punitive Damages*

Dr. Tronzo argues legal error in the district court's reduction of the punitive damages award from $20,000,000 to $52,000. Dr. Tronzo asserts that, because Biomet never challenged the punitive damages award on appeal in *Tronzo I,* it necessarily waived any right to challenge this award on remand, and the initial punitive damages award became the "law of the case." Alternatively, Dr. Tronzo argues that the district court's reduction of the punitive damages award was outside the scope of our remand in *Tronzo I* and, therefore, revisiting this issue was prohibited by the mandate rule.

In response, Biomet asserts that it did not waive its constitutional challenge to the punitive damages and that neither the law of the case nor the mandate rule prevented the district court from revisiting this issue. By appealing the liability for the compensatory damages, Biomet argues, it implicitly challenged its liability for punitive damages as well. Biomet further argues that the doctrine of law of the case and the mandate rule do not preclude Biomet from asserting issues that only became ripe on remand. Because the disparity in compensatory and punitive damages first arose on remand when the district court reduced the compensatory damages, Biomet argues this issue was never waived.

■ We agree that by failing to appeal the award of punitive damages in *Tronzo I,* Biomet waived this issue and was barred from raising it on remand. As an initial

matter, Biomet's assertion that it challenged the punitive damages award indirectly in its initial appeal is not persuasive. It is uncontroverted that Biomet never appealed, nor questioned in any way, the *amount* of the punitive damages on appeal to this court in *Tronzo I.* Now, we need only consider whether Biomet's failure to raise this challenge in its first appeal waived its right to contest the amount of punitive damages in subsequent proceedings.

■ As noted above, Dr. Tronzo presents the issue of waiver in terms of either application of the doctrine of law of the case or an application of the mandate rule. In considering this question of waiver, we are guided by the approach of our recent decision in *Engel Industries, Inc. v. Lockformer Co.,* 166 F.3d 1379, 49 USPQ2d 1618 (Fed.Cir.1999). In that case, the alleged waiver concerned an issue that was within the scope of the initial judgment of the district court and was not appealed. We concluded that the issue was disposed of by the initial decision on appeal. While Dr. Tronzo argues waiver under law of the case, as well as the mandate rule, we confine our analysis to the determination of the scope of our mandate in *Tronzo I.* In other words, we consider whether the amount of punitive damages was an issue within the scope of the initial judgment of the district court. If so, it was necessarily incorporated within the scope of our mandate in *Tronzo I* and foreclosed from further review on remand.[1]

As described above, Biomet's main challenge to Dr. Tronzo's arguments of waiver is its contention that the constitutional issue was not ripe until remand and, therefore, could not have been appealed initially, and could not properly be considered within the scope of the initial judgment. Under these circumstances, Biomet argues, it is inappropriate to consider this issue waived or foreclosed by our mandate following the initial appeal in *Tronzo I.* And in further support of its contentions, Biomet points to our decisions in *Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 42 USPQ2d 1897 (Fed.Cir.1997), and *Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 137 F.3d 1475, 45 USPQ2d 1865 (Fed.Cir. 1998), where we held that issues not reached by the district court were not waived by a failure to raise these issues on a first appeal.

We are unpersuaded by Biomet's arguments. The present case is not comparable to *Laitram* or *Exxon.* In each of those cases, the trial court had not addressed the contested issue and, therefore, the issue was not deemed within the scope of the judgment initially appealed. *Laitram,* 115 F.3d at 951–52; *Exxon,* 137 F.3d at 1478–79. In the present case, however, the district court *did* consider the contested issue because it granted an award of punitive damages based on the jury verdict.[2] Despite Biomet's arguments to the contrary, the appropriateness of the amount of punitive damages was then ripe for legal challenge. And indeed, Biomet

---

1. Other courts have attached different labels to the issue before this court. *See, e.g.,* Wright, Miller & Cooper, Federal Practice & Procedure § 4478 (1981); *Engel,* 166 F.3d at 1383, 49 USPQ2d at 1621 (citing cases discussing "waiver" and "law of the case" in support of its application of the mandate rule); *United States v. Polland,* 56 F.3d 776, 779 (7th Cir.1995) (explaining that law of the case doctrine is a corollary to the mandate rule). Many courts, however, have addressed this issue as we do, as an application of the mandate rule. *See Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 167–68, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Biggins v. Hazen Paper Co.,* 111 F.3d 205, 209 (1st Cir.1997); *Mason,*

182 F.3d at 1214; *Eason v.. Thaler,* 73 F.3d 1322, 1329 (5th Cir.1996). We conclude that the present issue is best labeled and treated as an application of the mandate rule.

2. Moreover, unlike the present case, in *Laitram,* the alleged waiver was due to the *appellee's* failure to raise an issue in the initial appeal. In concluding that the issue was not waived in that case, we noted that appellees do not select the issues to be appealed, and, therefore, the policies of waiver are less implicated by an appellee's failure to raise an issue. *Laitram,* 115 F.3d at 954, 42 USPQ2d at 1902–03.

did challenge the amount of punitive damages at that time, arguing that the amount of punitive damages was excessive and not supported by the weight of the evidence. In its motion for judgment as a matter of law and for a new trial, Biomet argued:

> Even though at best the only damages that Dr. Tronzo could have suffered in this case would have been a few thousand dollars in patent costs, the jury awarded a $7.1 million compensatory award coupled with a $20 million punitive award.

Thus, Biomet's ripeness argument is misplaced. The district court had ruled on the issue of punitive damages in its initial decision and had further responded to Biomet's challenge to the appropriateness of the amount of punitive damages. Then, while disputing various rulings of the district court on appeal, Biomet chose not to contest the amount of punitive damages. Because Biomet failed to raise this issue, clearly implicated in the initial decision of the district court, our mandate in *Tronzo I* acted to prevent Biomet from raising this issue on remand or in any future proceedings in this litigation. *See Engel,* 166 F.3d at 1383, 49 USPQ2d at 1621.

■ Finally, while Biomet did not initially challenge the amount of punitive damages on constitutional grounds, it could have done so. The unconstitutionality of a large punitive damages award is not predicated on any specific ratio of punitive damages to compensatory damages. Rather, it is judged according to the three guideposts outlined by the Supreme Court in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809, namely, the reprehensibility of the conduct, the ratio of punitive damages to actual harm inflicted on the plaintiff, and the comparison of punitive damages to the civil or criminal penalties imposed for comparable conduct. *Id.* at 574–584, 116 S.Ct.

1589. Applying these guideposts, Biomet could have raised a constitutional challenge in *Tronzo I* if it considered the punitive damages, which the jury awarded based on its finding of wanton or willful conduct, to be excessive. Biomet could have asserted that, if the compensatory damages award is lowered, constitutional requirements mandate that the punitive award be commensurately adjusted; *see BMW,* 517 U.S. 559, 116 S.Ct. 1589. Biomet did not make any such challenge.

■ Thus, we conclude that Biomet's belated attack on the punitive damages award was foreclosed by our mandate in *Tronzo I.* This, however, does not entirely end our inquiry. Law of the case and the mandate rule are not always considered an unassailable limit on an appellate court's jurisdiction. Rather, these doctrines are better viewed as prudential doctrines that direct a court's discretion, but do not necessarily limit a court's power. *Crocker v. Piedmont Aviation, Inc.,* 49 F.3d 735, 739–40 (D.C.Cir.1995); *Heathcoat v. Potts,* 905 F.2d 367 (11th Cir.1990); *Eli Lilly and Co. v. Home Ins. Co.,* 794 F.2d 710, 717 (D.C.Cir.1986); *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). Accordingly, it may be appropriate in some circumstances for a court to revisit an issue that would otherwise be deemed waived and beyond the scope of an appellate mandate. Such circumstances, however, must be exceptional. *See id.* Otherwise, the underlying rationales for the doctrines of law of the case and the mandate rule would be thwarted.[3] However, courts have considered revisiting issues otherwise foreclosed in circumstances where there has been a substantial change in the evidence. *See id.*

Here, with the reduction in the award of compensatory damages from $7,134,000 to $520, Biomet argues, the ratio of the puni-

---

**3.** Such rationales include the need for (and the litigant's right to) finality, judicial economy, the consistency of judicial decisions, the discouragement of piecemeal adjudication, and the prevention of the perverse result of allowing a litigant to be in a better position by failing to raise an issue in an initial appeal. *See, e.g., Arizona,* 460 U.S. at 619, 103 S.Ct. 1382; *Northwestern Indiana Tel. Co., Inc. v. Fed. Communications Comm'n,* 872 F.2d 465, 470 (D.C.Cir.1989); *Heathcoat,* 905 F.2d at 370; *Crocker,* 49 F.3d at 735 (D.C.Cir.1995).

tive damages award ($20,000,000) to compensatory damages went from 2.8 to 1 to 38,000 to 1. According to Biomet, its challenge to the punitive damages on remand was a "totally different challenge" than it might have raised when the ratio was only 2.8 to 1.

We cannot, however, accept Biomet's contention. True, 38,000 to 1 is a high ratio, and such a particularly high ratio will certainly "raise a suspicious judicial eyebrow." *Id.* at 583, 116 S.Ct. 1589 (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 481, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (O'Connor, J., dissenting)). But the constitutionality of a punitive damages award is not simply a matter of numbers or ratios. *BMW*, 517 U.S. at 582, 116 S.Ct. 1589 ("We have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula. . . ."). Rather, as noted above, Biomet's challenge to the amount of punitive damages, viewed under Supreme Court law in *BMW*, involves a consideration of three "guideposts," only one of which is the ratio of compensatory to punitive damages. The court must also consider the reprehensibility of the conduct and any civil or criminal penalties for similar conduct. And of these three guideposts, it was not the ratio of punitive to compensatory damages, but the reprehensibility of the conduct that was deemed by the Supreme Court to be "the most important indicium of the punitive damages award." *Id.* at 575, 116 S.Ct. 1589. With respect to this most important guidepost, we note that Biomet never challenged on appeal the jury's finding of wanton or willful conduct in support of the punitive damages liability.

Moreover, Biomet's focus on the ratio of damages presents even this limited issue too simplistically. The guidepost articulated by the Supreme Court was the ratio of punitive damages to "actual and *potential* damages." *BMW*, 517 U.S. at 582, 116 S.Ct. 1589 (emphasis added). In discussing this guidepost, the Court elaborated:

> [L]ow awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.

*Id.* In the present case, in discussing the reprehensibility of Biomet's conduct, the district court pointed to record evidence in support of Dr. Tronzo's claim that Biomet misappropriated his ideas and commented that "Biomet misled Dr. Tronzo and substantially profited thereby." The court then went on to note that the compensatory damages "[did] not adequately reflect the actual harm caused." In addition, in regard to the limited record evidence of compensatory damages, the court further commented that the parties were represented by "competent counsel who made strategic decisions throughout the course of protracted litigation," indicating competent evidence of damages may have existed, but was never introduced. Thus, there is a strong suggestion in the record that the potential compensatory damages may have been much higher than what was actually awarded.

Overall, therefore, we cannot conclude that the reduction of the amount of compensatory damages on remand created such a substantial change in the facts to allow the district court to revisit the punitive damage award. Accordingly, we conclude that the district court erred in reducing the amount of punitive damages and that such action was foreclosed by our mandate in *Tronzo I*. We reverse the district court's judgment on this matter and reinstate the original $20,000,000 award of punitive damages.

## IV. *Remittitur*

■ Finally, Dr. Tronzo claims legal error in the district court's rejection of his claim that the reduction in the compensatory and punitive damages awards was a remittitur, and in its failure to order a new

trial on these issues. Because we have reversed the court's reduction of punitive damages, Dr. Tronzo's claim with respect to these damages is now moot. Thus, we only consider Dr. Tronzo's claim with respect to the compensatory damages.

Dr. Tronzo argues that under the rule announced in *Hetzel v. Prince William County*, 523 U.S. 208, 118 S.Ct. 1210, 140 L.Ed.2d 336 (1998), when a court determines that the evidence does not support a damages award, and the damages must be recalculated, the court is imposing a remittitur. If the court then imposes a lesser amount of damages than the jury awarded, and the plaintiff does not accept this reduction, the Seventh Amendment to the United States Constitution requires that the plaintiff be granted the option of a new trial. Dr. Tronzo argues that he rejected the district court's remittitur on the compensatory damages award and moved for a new trial. He contends that the district court's denial of his request for a new trial was therefore in error.

In response, Biomet points to Eleventh Circuit law distinguishing the *Hetzel* decision. *Johansen v. Combustion Eng'g*, 170 F.3d 1320, 1330–31 (11th Cir.1999). Biomet argues that the analysis in *Johansen* should guide this court in considering whether the reduction in compensatory damages in this case constituted a remittitur. According to the *Johansen* court, "the Seventh Amendment is not offended" when the reduction in a damages award is necessitated by legal error. *Johansen*, 170 F.3d at 1330. The *Johansen* court further noted that *Hetzel* considered a classic remittitur situation, where the judge had exercised his discretion to reduce a damages award that he felt was not adequately supported by the evidence. *Id.* In contrast, the verdict in the case before the *Johansen* court was reduced as legally impermissible under the Constitution. Similarly, Biomet argues that the reduction in compensatory damages in the present case was a purely legal issue. As a matter of law, there was no support for the compensatory damages award beyond that

awarded by the district court. Thus, there was no issue for the jury to reconsider.

We agree with Biomet that the reduction in compensatory damages did not constitute a remittitur entitling Dr. Tronzo to a new trial. While Supreme Court law, to the extent articulated in *Hetzel*, applies to remittitur situations, we adopt for purposes of this case the controlling Eleventh Circuit's conclusion that *Hetzel* did not consider the case of the reduction in a damages award on purely legal grounds.

In *Hetzel*, a jury had found for the plaintiff on her civil rights claim under title VII of the Civil Rights Act and awarded $500,000 in damages. Considering this award excessive in light of the limited evidence of harm, the court reduced this award to $50,000. This discretionary decision necessarily involved a reweighing of the evidence and reassessment of the appropriate amount of damages warranted by the facts decisions traditionally left to a jury.

In contrast, in the present case, the district court did not reweigh any evidence, nor did it exercise its discretion in computing the damages award. Instead, the court awarded the maximum damages possible given the lack of competent evidence in the record. The award of $520 in compensatory damages was based on the total costs for prosecuting the '780 patent, as evidenced by the record. The parties do not dispute this figure. The only true dispute here is over the proper amount of compensatory damages for Dr. Tronzo's "lost business opportunities." But, as the district court explained, Dr. Tronzo never introduced any legally competent evidence to support any such damages award. The evidence in the record that Dr. Tronzo attempted to rely on was too remote and inconclusive to reflect the actual injury incurred by Dr. Tronzo or to measure his damages. Thus, re-presenting this issue to the jury would have been pointless because, as a matter of law, the compensatory damages award could not exceed the $520 already awarded. *Cf. Johansen*, 170

**1352**

F.3d at 1332 n. 19 (commenting that giving the plaintiff the option of a new trial would be of no value because the award was already the maximum permissible under the Constitution).

In conclusion, we see no error in the district court's refusal to grant Dr. Tronzo a new trial in light of its reduction in the compensatory damages award.

### CONCLUSION

For the reasons stated above, we affirm the district court's judgment as to the award of compensatory damages and its rejection of Dr. Tronzo's motion for a new trial as to these damages, and we reverse the court's reduction in the punitive damages award, reinstating the original punitive damage award of $20,000,000.

Each party shall bear its own costs.

*AFFIRMED–IN–PART* AND *RE-VERSED–IN–PART*