**SPINE SOLUTIONS, INC.,** a Delaware corporation; **Synthes Spine Company L.P.,** a Delaware limited partnership; **Synthes, Inc.,** a Delaware corporation, Plaintiffs,

v.

**MEDTRONIC SOFAMOR DANEK, INC.,** and **Metronic Sofamor Danek USA, Inc.,** Defendants.

No. 2:07–02175–JPM–dkv.

United States District Court, W.D. Tennessee, Western Division.

Nov. 23, 2011.

Albert C. Harvey, Justin Edward Mitchell, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, Daniel E. Gustafson, Karla M. Gluek, Gustafson Gluek PLLC, Minneapolis, MN, Jeffrey M. Olson, Matthew S. Jorgenson, Paul H. Meier, Samuel N. Tiu, Los Angeles, CA, for Plaintiffs.

Anthony G. Beasley, Cyrus A. Morton, Jan M. Conlin, Marta M. Chou, Sharon Elizabeth Roberg–Perez, Munir R. Meghjee, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, Grady M. Garrison, John R. Branson, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Memphis, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR A NEW TRIAL ON DAMAGES AND DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF ISSUES ON REMAND

McCALLA, Chief Judge.

Before the Court is Defendants Medtronic Sofamor Danek, Inc. and Medtronic

Sofamor Danek USA, Inc.'s ("Medtronic") Status Report on Remand from the Court of Appeals for the Federal Circuit, submitting that a new trial on damages is necessary, filed May 12, 2011. (D.E. 530.) The Court construes this Status Report as Medronic's Motion for a New Trial on Damages ("Medtronic's Mot."). On June 30, 2011, Plaintiff Spine Solutions, Inc. ("SSI") filed a Motion for Summary Adjudication of Issues on Remand and Response to Medtronic's Status Report ("Mot. for Summ. Adj."), contending that no new trial on damages was necessary. (D.E. 536.) On July 18, 2011, Medtronic filed a Response and Reply to Spine Solution's Motion for Summary Adjudication of Issues on Remand ("Medtronic's Resp."). (D.E. 538.) On August 5, 2011, SSI filed a Reply in Support of Motion for Summary Adjudication ("SSI's Reply"). (D.E. 548.) The Court held a hearing in this matter on September 27, 2011. Present for Plaintiff were Albert Harvey, Esq., Jeffrey Olson, Esq., and Daniel Gustafson, Esq. Present for Defendants were John Branson, Esq., Jan Conlin, Esq., and Munir Meghjee, Esq.

For the following reasons, the Court GRANTS Defendants' Motion for a New Trial on Damages and DENIES Plaintiff's Motion for Summary Adjudication of Issues on Remand.

## I. Background

This case arises out of U.S. Patent No. 6,936,071 ("'071 Patent"), issued on August 30, 2005, to inventors Thierry Marnay and Boris Beyersdorff, who assigned the patent to SSI. The '071 patent is entitled "Intervertebral Implant." SSI sued Medtronic, alleging that Medtronic's Maverick, A–Maverick ("A–Mav"), and O–Maverick ("O–Mav") intervertebral implants infringe independent claim 1 and dependent claims 2, 6, 7, 10, 11, and 13 of the '071 patent. Medtronic raised various defenses, including noninfringement, invalidity for obvious-

ness, and failure to comply with the written description requirement.

After claim construction (D.E. 261), Medtronic filed a motion for summary judgment of noninfringement with respect to O–Mav; SSI filed a cross-motion for partial summary judgment that O–Mav infringes claims 1 and 2. The Court granted SSI's motion, ruling that O–Mav infringes claims 1 and 2 both literally and under the doctrine of equivalents. (D.E. 313.) The Court then denied Medtronic's motion for summary judgment—which argued that claim 1 is invalid for lack of written description—and granted SSI's cross-motion to dismiss all of Medtronic's defenses under 35 U.S.C. § 112. (D.E. 314.) The parties then stipulated that the accused products infringed all of the asserted claims.

A few weeks before trial, Medtronic filed a motion in limine to preclude SSI from offering any evidence relating to lost profits. (D.E. 338.) SSI opposed Medtronic's motion and sought to amend its complaint to add as co-plaintiffs Synthes Spine and Synthes, Inc. (D.E. 360.) Medtronic objected, arguing that Synthes Spine and Synthes, Inc. had no standing to bring an infringement suit on the '071 patent. The parties ultimately agreed that Medtronic could submit an offer of proof (outside the presence of the jury) as to the standing issue, and the Court allowed SSI to amend its complaint to name SSI, Synthes Spine, and Synthes, Inc. (collectively, SSI) as co-plaintiffs. (D.E. 379; D.E. 388.)

The case proceeded to trial on Medtronic's obviousness defense, SSI's willful infringement claim, and damages. At trial, the jury rendered a verdict in favor of SSI. The jury found that Medtronic did not prove that the '071 patent was invalid for obviousness. The jury also found that Medtronic's infringement was willful. The jury awarded SSI $5.7 million in lost profits for the 2005–2007 period and an 18

percent reasonable royalty on the remaining $9.1 million in revenue from infringing sales of the accused O–Mav, A–Mav, and Maverick products. (D.E. 411.)

Following the verdict, Medtronic moved for judgment as a matter of law ("JMOL") on grounds of obviousness and non willfulness. (D.E. 493.) The Court denied Medtronic's motions. The Court also found that Medtronic waived its standing argument and therefore denied Medtronic's motion for JMOL that SSI was not entitled to lost profits. The Court doubled the damages award pursuant to 35 U.S.C. § 284 and awarded attorney fees under 35 U.S.C. § 285. (D.E. 495.) Finally, the Court entered a permanent injunction forbidding Medtronic from, among other things, using, selling, or transferring any accused devices already outside the United States (D.E. 496.) This extraterritorial portion of the injunction was stayed pending appeal.

On September 9, 2010, the Federal Circuit issued its decision on Medtronic's appeal. (D.E. 526.) The Federal Circuit issued its mandate on December 7, 2010. (D.E. 527.) The Federal Circuit affirmed-in-part, reversed-in-part, vacated-in-part, and remanded. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,* 620 F.3d 1305 (Fed.Cir.2010). The Federal Circuit affirmed: (1) the Court's denial of Medtronic's motion for JMOL that the asserted claims of the '071 patent are invalid for obviousness; (2) the Court's grant of SSI's motion for partial summary judgment dismissing Medtronic's 35 U.S.C. § 112 defenses; and (3) the Court's claim

construction of the term "operative engagement." *Id.* at 1312, 1314. The Federal Circuit reversed and vacated the Court's ruling that the O–Mav infringes claims 1 and 2 of the '071 patent, and remanded for the Court to enter judgment of noninfringement with respect to the O–Mav. The Federal Circuit stated that "Synthes Spine and Synthes, Inc. lack standing to sue for infringement of the '071 patent because they are neither owners nor exclusive licensees of the patent." *Id.* at 1317. Because neither Synthes Spine nor Synthes, Inc. had standing to sue, and because SSI does not itself sell any products, the Federal Circuit held that "SSI is not entitled to recover for any lost profits suffered by Synthes Spine or Synthes, Inc." *Id.* at 1318. Accordingly, the Federal Circuit reversed the Court's denial of Medtronic's motion for JMOL of no lost profits and vacated the jury's lost profits damages award [1]; (4) the Court's denial of Medtronic's motion for JMOL of no willfulness; (5) having found no willfulness, the Federal Circuit vacated the awards of enhanced damages [2] and attorney fees; and (6) the extraterritorial portion of the injunction as contrary to 35 U.S.C. § 283. *Id.* at 1317, 1319–20.

On remand, the Federal Circuit specifically directed the Court to: (1) "enter judgment of noninfringement with respect to O–Maverick"; (2) determine "the proper reasonable royalty to which SSI might be entitled on the infringing sales of Maverick and A–Maverick for which the jury awarded lost profits"; and (3) "modify the

---

1. The jury awarded SSI $5,783,246.00 in lost profits for the 2005–2007 period and an 18 percent ($1,643,681.00) reasonable royalty on the remaining $9,131,562.00 in revenue from infringing sales of the accused O–Maverick, A–Maverick, and Maverick products. (D.E. 411.) The Court awarded SSI an additional $4,619,510.00 in lost profits for the post-verdict period through August 26, 2009 and an

18 percent ($1,009,872.00) reasonable royalty for the additional $5,610,401.00 in infringing sales revenue.

2. Calculating the total damages as lost profits plus royalties, and inclusive of the post-verdict damages, the Court awarded SSI double damages totaling $26,112,620.00. The Court awarded SSI $8,635,980.74 in attorney fees.

terms of the permanent injunction by deleting the extraterritorial portion."[3] *Id.* at 1319–20.

## II. Analysis

### A. The *Uniloc* Decision

On January 4, 2011, the Federal Circuit issued its opinion in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed.Cir. 2011), in which it rejected the 25 percent rule of thumb. The rule had been a common tool for approximating reasonable royalty rates:

> This court now holds as a matter of Federal Circuit law that the 25 percent rule of thumb is a fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation. Evidence relying on the 25 percent rule of thumb is thus *inadmissible* under *Daubert* and the Federal Rules of Evidence, because it fails to tie a reasonable royalty base to the facts of the case at issue.

*Id.* at 1315 (emphasis added). With regard to the rule's acceptance by the Federal Circuit and lower courts, the court explained:

> The admissibility of the bare 25 percent rule has never been squarely presented to this court. Nevertheless, this court has passively tolerated its use where its acceptability has not been the focus of the case. Lower courts have invariably admitted evidence based on the 25% rule, largely in reliance on its widespread acceptance or because *its* admissibility was uncontested.

*Id.* at 1314–15 (citing cases). The Federal Circuit cited only one lower court case that offered any significant objection to the rule's admissibility, in which the court admitted the evidence, but refused to give it substantial weight. The Federal Circuit went on to explain its holding:

> [T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case. The 25 percent rule of thumb as an abstract and largely theoretical construct fails to satisfy this fundamental requirement. The rule does not say anything about a particular hypothetical negotiation or reasonable royalty involving any particular technology, industry, or party.

*Id.* at 1317. The court clarified that the 25 percent rule cannot even be "a starting point to which the *Georgia–Pacific [Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y.1970)] factors are then applied to bring the rate up or down." *Id.*

The court then looked at the facts of the matter under review, finding that the challenged expert's "testimony was based on the use of the 25% rule of thumb as an arbitrary general rule, unrelated to the facts of this case." The court thus held that Microsoft was entitled to a new trial on damages because "[t]he use of such a rule fails to pass muster under *Daubert* and taints the jury's damages calculation." *Id.* at 1318.

### B. Medtronic's Position

Medtronic submits that a new trial on damages is necessary for two reasons: (1) The jury's damages award was fundamentally tainted by the use of the 25 percent rule because SSI's expert, Dr. Mangum, established his baseline reasonable royalty rate using the 25 percent rule; and (2) A new trial on reasonable royalty damages on the entire royalty base of infringing sales of the Maverick and A–Mav is required in order to account for the O–Mav as a noninfringing alternative. The Federal Circuit determined that, as a matter of law, the O–Mav does not infringe claims 1

---

**3.** SSI does not object to Medtronic's request to modify the scheduling order; therefore, that portion of Medtronic's Motion is GRANTED.

and 2 of the '071 patent; thus, the court established the O–Mav as a non-infringing alternative that the original jury was precluded from considering. Medtronic argues that a reasonable royalty award should account for the effect of noninfringing alternative products on the outcome of the hypothetical negotiation. Medtronic argues that it was precluded from arguing that the O–Mav was a noninfringing substitute. Medtronic also submits that, along with deleting the extraterritorial portion, the injunction should also be modified to remove all references to the O–Mav. Medtronic states that the Federal Circuit's mandate implicitly requires this modification.

## C. SSI's Position

SSI contends that no new trial on damages is necessary and the Court can enter relief summarily. First, SSI contends that the Federal Circuit's decision on *Uniloc* provides no basis for a new trial. SSI argues that Medtronic waived any objections to the admissibility of Dr. Mangum's testimony because it did not raise them at trial or on appeal. SSI also maintains that a new trial to determine a reasonable royalty rate or award is outside the scope of the Federal Circuit's mandate. SSI argues that the issues addressed by an appellate court become the law of the case and cannot be reconsidered by the district court.

Second, SSI argues that the Federal Circuit's noninfringement determination concerning the O–Mav device is no basis for a new trial, because granting a new trial would exceed the scope of the mandate. SSI argues that Medtronic has waived any argument that the jury should have considered the O–Mav device as a noninfringing alternative when it calculated the reasonable royalty rate. SSI also contends that the Federal Circuit never addressed whether the O–Mav was an acceptable noninfringing substitute for purposes of addressing the reasonable royalty rate. SSI further argues that Medtronic never developed any evidence that the O–Mav was an acceptable alternative.

## D. Whether *Uniloc* Provides a Basis for a New Trial

■ Prior to *Uniloc*, the 25 percent rule of thumb enjoyed widespread acceptance by district courts. *See, e.g., Paice LLC v. Toyota Motor Corp.,* 609 F.Supp.2d 620 (E.D.Tex.2009); *GSI Grp., Inc. v. Sukup Mfg. Co.,* 641 F.Supp.2d 732, 744–45 (C.D.Ill.2008); *Bose Corp. v. JBL, Inc.,* 112 F.Supp.2d 138 (D.Mass.2000); *Standard Mfg. Co. v. United States,* 42 Fed. Cl. 748 (1999). The rule was also applied or tolerated by the Federal Circuit. *See, e.g., i4i Ltd. v. Microsoft Corp.,* 598 F.3d 831 (Fed. Cir.2010); *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 876–82 (Fed.Cir.2010) (Newman, J., concurring in part and dissenting in part). A court may consider an issue not raised at trial where a subsequent decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless. *Forshey v. Principi,* 284 F.3d 1335, 1356 (Fed.Cir.2002) (citing *Holland v. Big River Minerals Corp.,* 181 F.3d 597, 605–06 (4th Cir.1999) ("The intervening law exception to the general rule that the failure to raise an issue timely in the district court waives review of that issue on appeal applies when 'there was strong precedent' prior to the change, such that the *failure to raise the issue was not unreasonable* and the opposing party was not prejudiced by the failure to raise the issue sooner.") (emphasis added)).

Given the widespread acceptance of the 25 percent rule, it would not have been unreasonable for Medtronic to have failed to raise the issue before the Court. At the hearing on the motion for summary adjudi-

cation, however, SSI urged the Court to find that it was unreasonable for Medtronic to have failed to raise the issue at trial. According to SSI, *Uniloc* simply holds that the use of the 25 percent rule must be tethered to the facts of the case. SSI argues that if the use of the rule in the instant case were untethered to its facts, Medtronic should have objected. SSI argues that Medtronic's objection would not have been "foreclosed or futile." (Mot. for Summ. Adj. 8.)

The key question, however, is whether the law was so well settled that any attempt to challenge it would have *appeared* futile, or "where existing law appear[ed] so clear as to foreclose any possibility of success." *United States v. Washington,* 12 F.3d 1128, 1139 (D.C.Cir.1994) (refusing to apply the supervening-decision doctrine because, *inter alia,* no court of appeals had upheld a jury instruction that contained the challenged legal principle, and defendants had been put on notice that a plausible objection to the jury instruction might have "an especial advantage" given the court of appeals' previous statements on the matter). Here, the Federal Circuit had implicitly upheld the use of the 25 percent rule prior to *Uniloc,* and Defendant had no notice that an objection to its use would have been fruitful in light of the Federal Circuit's previous treatment of the rule. The law does not speak in absolutes and recognizes that a litigant might not be aware of the necessity of making an objection at trial where the great weight of the case law suggests that an objection is not worth making. Indeed, the *Uniloc* court itself cites a number of its own cases and district court cases accepting the use of the 25 percent rule. *Uniloc,* 632 F.3d at 1314–15.

SSI also places great weight on the fact that the *Uniloc* decision was a panel decision, and submits that *Uniloc* could not be a change in the law because a panel decision cannot overrule prior circuit precedent. (Mot. for Summ. Adj. 8.) Again, the key question is whether existing law appeared so clear as to foreclose any possibility of success. While the existing case law demonstrated that the Federal Circuit would have approved the use of the 25 percent rule, the Federal Circuit has now issued a definitive statement on the matter, stating, sua *sponte,* that it will not tolerate the rule's use. The court's refusal to take up the matter *en banc* also suggests that *Uniloc* is now the rule in the Federal Circuit.

 Finally, the law of the case doctrine affords the Court discretion in this matter. The law of the case doctrine has no application to prospective relief sought where, while the case was pending, a "controlling authority" changed the law. *V Secret Catalogue, Inc. v. Moseley,* 605 F.3d 382 (6th Cir.2010). Additionally, the mandate rule is a specific application of the law of the case doctrine. *Jones v. Lewis,* 957 F.2d 260 (6th Cir.1992). Finally, the law of the case doctrine and the mandate rule are not always considered an unassailable limit on an appellate court's jurisdiction. *Tronzo v. Biomet, Inc.,* 236 F.3d 1342 (Fed.Cir.2001). Rather, these doctrines are better viewed as prudential doctrines that direct a court's discretion, but do not limit a court's power. *Id.* It may be appropriate in some circumstances for a court to revisit an issue that would otherwise be deemed waived and beyond the scope of an appellate mandate. *Id.* Such circumstances must be exceptional. *Id.* Otherwise, the underlying rationales for the doctrines of law of the case and the mandate rule, such as finality, judicial economy, and consistency, would be thwarted. *Id.; see also Assoc. of Frigidaire Model Makers v. Gen. Motors Corp.,* 1995 WL 141344, 1995 U.S.App. LEXIS 7615 (6th Cir.1995) ("It is not improper for

a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice. Therefore, the law of the case doctrine precludes reconsideration of settled issues unless a controlling authority sets forth a contrary view of the law.").

Here, SSI's expert based his reasonable royalty calculations on the now-inadmissible rule of thumb; consequently, an evidentiary foundation on which the jury made a reasonable royalty finding may not now be considered. The jury arrived at an 18 percent reasonable royalty rate after having heard testimony based on the 25 percent rule of thumb. Thus, the jury's verdict, based on the 25 percent rule, is no longer valid. It would be unjust for the Court, as SSI urges, to simply multiply the infringing sales of the Maverick and A–Mav by the 18 percent royalty set by the jury, because the jury's damages considerations were "tainted" by the use of inadmissible evidence. The Court therefore concludes that Medtronic has not waived its objections. The Court finds that it is appropriate in this case for a jury to revisit an issue not specifically referenced in the appellate court's mandate.

### E. Whether the O–Mav is a Non–Infringing Alternative

■ The fact that the defendant in a patent infringement case could have continued marketing its product but for the infringement is a factor relevant to the determination of a proper royalty during hypothetical negotiations, for the defendant would have been in a stronger position to negotiate for a lower royalty rate knowing it had a competitive noninfringing device in the wings. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563 (Fed.Cir.1996). Spine Solutions correctly notes that in *Zygo*, whether there was an acceptable noninfringing substitute was a central damages issue on appeal. In the instant case, in contrast, the Court denied Medtronic's mo-

tion for summary judgment of noninfringement with respect to O–Mav, and Medtronic was precluded from arguing to the jury that the O–Mav was a noninfringing substitute. In *Minnesota Mining & Manufacturing Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559 (Fed.Cir. 1992), the defendant argued on appeal that its product was an acceptable, noninfringing substitute. *Minn. Mining & Mfg. Co.*, 976 F.2d at 1577–78. The court found the argument frivolous because the only support for the argument was the defendant's allegation that the plaintiff failed to show that the product was *not* a noninfringing substitute; therefore, the defendant argued that the plaintiff failed to carry its burden to show that no infringing alternative existed. *Id.* at 1578. This issue was not considered at trial, however, and the appellate court held that the defendant could not expect this argument to be heard on appeal when it was not raised at trial and never made part of the case. *Id.* In the instant case, Medtronic was precluded from raising the issue at trial, but it stated in discovery that it believed the O–Mav was "a clear non-infringing alternative." (Medtronic's Resp., Ex. A.)

Medtronic also argues that *Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342 (Fed.Cir.1998), supports a new trial on damages. In that case, the defendant argued it was error for the trial court, after granting a new trial on the issue of obviousness, to exclude certain evidence of obviousness. *CellPro*, 152 F.3d at 1356. The defendant argued that it did not waive its right to rely on that evidence simply because it chose not to rely on it during the first trial. *Id.* The defendant also argued that the evidence did not become pertinent until after the first trial, when the district court adopted a broadened construction of terms. *Id.*

The Federal Circuit agreed that the district court erred in failing to consider the defendant's evidence because "[t]he district court, when it construed the claims after the trial, changed the rules of the game." *Id.* at 1357. New prior art became potentially relevant, and the defendant was entitled to present it following the court's grant of a new trial. *Id.* That defendant knew of the evidence before the first trial but "chose not to rely upon it then [could not] constitute a waiver to apply that art against a claim whose construction was not yet finally determined by the court." *Id.*

This argument is meritorious in light of the Sixth Circuit's holding that a trial court "is required to 'implement both the letter and the spirit' of [an] appellate court's mandate, 'taking into account the appellate opinion and the circumstances it embraces.'" *Caldwell v. City of Louisville,* 200 Fed.Appx. 430, 433 (6th Cir.2006) (quoting *Westside Mothers v. Olszewski,* 454 F.3d 532, 538 (6th Cir.2006)). As outlined *supra,* the circumstances of this case are such that previously admissible evidence on which the jury based its royalty calculations is no longer admissible. The Federal Circuit instructed this Court to enter a judgment of noninfringement with respect to the O–Mav. It would make little sense for the Court to enter a judgment of noninfringement with respect to the O–Mav, but for the jury not to consider the O–Mav as a noninfringing substitute when determining damages. Further, Medtronic developed discovery showing that the O–Mav's design was a noninfringing substitute, but was precluded from presenting that evidence at trial only because the Court denied Medtronic's motion for summary judgment of noninfringement on the O–Mav. Medtronic cannot be held to have waived its argument that the O–Mav is a noninfringing substitute. In keeping with the spirit of the mandate, the Court GRANTS a new trial on damages and DENIES the motion for summary adjudication.

### III. Conclusion

For the foregoing reasons, Medtronic's Motion for a New Trial on Damages in GRANTED and SSI's Motion for Summary Adjudication of Issues on Remand is DENIED.